**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Wm. R. Hague, Inc.,

      Plaintiff,

v.

Eugene Sandburg, *et al.*,

      Defendants.

Case No. 2:06-cv-363

Judge Michael H. Watson

## OPINION AND ORDER

Plaintiff asserts, *inter alia,* claims of federal trademark infringement and common law breach of contract.  This matter is before the Court on defendant Eugene Sandburg's ("Sandburg") motion to dismiss or transfer or, in the alternative, to stay (Doc. 10).  For the following reasons, the Court grants Sandburg's motion in part and denies it in part.

### I. Facts

Plaintiff Wm. R. Hague, Inc. ("Hague Water") is an Ohio corporation with its principal place of business in Groveport, Ohio.  Plaintiff is in the business of manufacturing and marketing water softeners and water filtration units for domestic, commercial and industrial use.

Defendant Eugene Sandburg is an individual citizen of the State of Florida.  He is president of defendant That Water Place, a Florida corporation with its principal place of business in Port St. Lucie, Florida.

In July 2003, Sandburg and That Water Place entered into an authorized residential Dealer Agreement with Hague Water. The Dealer Agreement allowed defendants to sell Hague Water products and to use Hague water trademarks, logos, and trade names in the sale of water equipment. The Dealer Agreement also required Sandburg and That Water Place to meet minimum monthly sales quotas. The Dealer Agreement contains a choice of forum clause, which states as follows:

> **EACH PARTY AGREES NOT TO BRING ANY ACTION, WHETHER LEGAL OR EQUITABLE, AGAINST THE OTHER PARTY, EXCEPT IN STATE OR FEDERAL COURT LOCATED IN FRANKLIN COUNTY, OHIO. BOTH PARTIES CONSENT TO SERVICE OF PROCESS FROM SAID COURTS, IN ACCORDANCE WITH THE RULES THEREOF, AND WAIVE ANY OBJECTIONS REGARDING INCONVENIENT FORUM, VENUE, OR PERSONAL JURISDICTION.** (bold and capital letters in original)

Plaintiff claims that by December 2005, Sandburg and That Water Place were not meeting the minimum sales quotas. Plaintiff terminated the Dealer Agreement on February 3, 2006.

On May 5, 2006, Sandburg filed an action in Florida state court, asserting state law claims including fraud in the inducement and unfair trade practices. Plaintiff moved to dismiss the Florida action on the basis of the forum selection provision in the Dealer Agreement. Sandburg opposed the motion to dismiss, arguing the forum selection provision is unenforceable because plaintiff fraudulently induced him to enter into the Dealer Agreement. On November 20, 2006, the Florida court granted plaintiff's motion to dismiss on the basis of the choice of forum provision.

Plaintiff filed the instant action on May 17, 2006, asserting federal trademark claims as well as state law claims. Plaintiff filed its motion for a preliminary injunction

on May 20, 2006, seeking an order enjoining defendants from further using plaintiff's trademarks. The alleged trademark violations include defendants' use of a telephone number for Hague Quality Water of the Treasure Coast, and defendants' use of a website with the address http:/haguewater.net.

On June 20, 2006, Sandburg filed his motion to dismiss or transfer or, in the alternative, to stay this action. The motion is based on the following grounds: (1) abstention is required under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976); (2) this Court lacks personal jurisdiction over Sandburg; (3) Count II fails to state a claim upon which relief can be granted; (4) plaintiff is not entitled to punitive damages on its Lanham Act claims; (5) the Court should transfer this case to Florida; and (6) in the alternative, this matter should be stayed pending the Florida court's determination of the validity of the forum selection clause. Plaintiff opposes Sandburg's motion to dismiss or transfer.

The Court conducted an informal conference on July 7, 2006, pursuant to S.D. Ohio Local Rule 65.1(a). During the conference, Sandburg's counsel indicated his understanding that Sandburg has no interest in continuing to use plaintiff's trademarks. In light of this, the Court encouraged the parties to engage in good faith negotiations to resolve the injunctive relief component of plaintiff's trademark claims. The Court thereafter conducted several telephone status conferences to monitor the parties' progress toward settlement. On August 2, 2006, the parties reported they had reached an Agreement settling the injunctive relief component of plaintiff's trademark claims. The Agreement contemplates that a Court of competent jurisdiction will enter an agreed permanent injunction requiring, *inter alia,* that Sandburg cease all use of Hague's

trademarks. The Agreement obviates the need for a hearing on plaintiff's motion for a preliminary injunction.

## II. Discussion

Sandburg moves to dismiss or transfer or, in the alternative, to stay this action on the following grounds: (1) abstention is required under the *Colorado River* doctrine; (2) this Court lacks personal jurisdiction over Sandburg; (3) Count II fails to state a claim upon which relief can be granted; (4) plaintiff is not entitled to punitive damages on its Lanham Act claim; (5) the Court should transfer this case to Florida; and (6) in the alternative, this matter should be stayed pending the Florida court's determination of the validity of the forum selection clause.

### A. *Colorado River* Abstention

Sandburg first argues that the Court should abstain from exercising jurisdiction over this case under the doctrine enunciated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976). It appears there are no claims presently pending against plaintiff in the Florida court. Nevertheless, the Court will proceed to address Sandburg's abstention argument.

The Court in *Colorado River* exhorted that abstention from the exercise of jurisdiction is the exception, not the rule. 424 U.S. at 813; *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 886 (6th Cir. 2002); *Painewebber , Inc. v. Cohen,* 276 F.3d 197, 206 (6th Cir. 2002). Federal courts have a "'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15 (1983)(*quoting Colorado River*, 424 U.S. at 817).

Accordingly, abstention is warranted only in "exceptional" circumstances. *Colorado River*, 424 U.S. at 817; *Painewebber,* 276 F.3d at 206.

The Sixth Circuit Court of Appeals applies an eight-factor test to determine whether abstention is proper under *Colorado River*:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Painewebber,* 276 F.3d at 206. When considering these factors, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *Painewebber,* 276 F.3d at 206.

The first of these factors supports the federal assertion of jurisdiction because the state court in Florida has not assumed any jurisdiction over any res or property in this case. The second factor for consideration relates to geographical considerations, and not to the relative jurisdictional scope of the fora. *Painewebber,* 276 F.3d at 207. Hague's action was filed in Florida state court, a substantial distance from the Southern District of Ohio. Litigation in Florida would likely be very inconvenient for Hague Water, a resident of Ohio. Substantial evidence, witnesses, and occurrences exist and occurred in both Ohio and Florida. Furthermore, Sandburg contracted to accept the jurisdiction of Ohio courts and had an opportunity to bargain for different treatment at the time of contracting. At the very least, the federal forum is not a less convenient

forum for Sandburg than the Florida state court is for Hague Water. Thus, the second factor favors retaining jurisdiction, or at the very least, is neutral on the issue.

With regard to the third factor, "piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine v. Compuserve Corp.*, 106 F.3d 337, 341 (6th Cir. 1998). The identical issues are not being litigated by both the Florida state court and this Court. Hague Water's claims before this Court sound primarily in federal trademark infringement while Sandburg's Florida state court claims are primarily based on fraudulent inducement to contract and interference with business relationship. "[C]oncurrent parallel actions alone do not present the danger of piecemeal litigation needed in order to grant abstention" because the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." *Colorado River*, 424 U.S. at 817. The presence of differing issues in the opposing court actions weighs against abstention.

The negligible difference in filing times between the two actions does not support abstention in this case. While it is true that Sandburg filed his action in Florida state court first, on May 5, 2006, Hague Water filed the instant lawsuit in this Court twelve days later, and one day later than Sandburg perfected service upon it. This difference in filing time is actually less than the time that the Supreme Court found to be immaterial in *Moses*, 460 U.S. at 21. The Court in *Moses* stated "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id*. This Court's retention of

jurisdiction in this case is supported by the fact that while both suits are still in the motions stages, this Court has already taken the step of mediating an agreement between the parties concerning plaintiff's claims for injunctive relief.

Both the federal and state courts are adequately placed to protect Hague Water's rights, but this does not outweigh the other factors against abstention. The level of progress in the two cases is similar.

"The doctrine of abstention...is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959). Considering all of the relevant factors together, and mindful that the balance is heavily weighted in favor of the exercise of jurisdiction, the Court finds that *Colorado River* abstention is not warranted in this case. In any event, it appears most or all of defendants' claims against plaintiff in the Florida court have been dismissed.

## B. Personal Jurisdiction

Sandburg next argues for dismissal on the grounds that this Court lacks personal jurisdiction over him. The Court reviews motions to dismiss by defendants under Rule 12(b)(2) by construing the pleadings and affidavits in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Plaintiff need only make a prima facie showing of personal jurisdiction to defeat such a motion. Id. Dismissal is proper only where the facts taken together fail to establish a prima facie case for personal jurisdiction. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

The Dealer Agreement contains a choice of forum clause, which states as follows:

**EACH PARTY AGREES NOT TO BRING ANY ACTION, WHETHER LEGAL OR EQUITABLE, AGAINST THE OTHER PARTY, EXCEPT IN STATE OR FEDERAL COURT LOCATED IN FRANKLIN COUNTY, OHIO. BOTH PARTIES CONSENT TO SERVICE OF PROCESS FROM SAID COURTS, IN ACCORDANCE WITH THE RULES THEREOF, AND WAIVE ANY OBJECTIONS REGARDING INCONVENIENT FORUM, VENUE, OR PERSONAL JURISDICTION.** (bold and capital letters in original)

Ohio law and federal law on the issue of forum selection clauses are substantially similar. *General Electric Co. v. G. Siempelkamp*, 29 F.3d 1095, 1098 n.3 (6th Cir. 1994). "[T]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.*, 66 Ohio St. 3d 173, 175 (1993). "The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court." *Preferred Capital, Inc. v. Associates in Urology,* 453 F.3d 718, 721 (6th Cir. 2006).

The U.S. Supreme Court has stressed the importance of the enforcement of forum selection clauses as being necessary in light of present-day commercial realities. A forum selection clause should be enforced absent a strong showing that it should be set aside. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)

A forum selection clause will be held enforceable unless it can be shown that enforcement would be unreasonable or unjust, or that the clause was invalid due to fraud or overreaching.  See *Bremen* 407 U.S. at 32 (1972).   To be enforceable, the contract must be commercial in nature.  *Id.*

      1.      *Commercial Nature of the Contract*

 "Commercial forum selection clauses between for-profit business entities are prima facie valid.  '[S]uch clauses are prima facie valid in the commercial context, so long as the clause has been fairly bargained for.'" *Preferred Capital* 453 F.3d at 721, (quoting *Kennecorp* 66 Ohio St. 3d at 175).

The commercial nature of the contract in this case has not been disputed by either of the parties.  In fact, it is quite obvious that this was a contract between two for-profit entities, Hague Water and Sandburg, and therefore meets the first part of the test for enforcement.

      2.      *Fraud or Overreaching*

A valid forum selection clause must not be the result of fraud or overreaching. Sandburg argues that the forum selection clause should be held invalid because he was fraudulently induced into signing the Dealer Agreement.  He does not, however, assert that he was fraudulently induced into agreeing to the forum selection clause. Rather, he asserts only that he was improperly induced into entering the contract as a whole.

In *Moses v. Business Card Express, Inc.*, 929 F.3d 1131 (6th Cir. 1991), the court upheld the trial court's enforcement of a forum selection clause in a franchise agreement over the claim that the fraudulent intent of the offeror should have invalidated the clause. The court held:

> [U]nless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause.

*Moses*, 929 F.3d at 1138, citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.4 (1974).

Sandburg does not argue that Hague fraudulently induced him to agree to the inclusion of the forum selection clause in the Dealer Agreement. " [G]eneral claims of fraud…do not suffice to invalidate the forum selection clause." *Preferred Capital* 453 F.3d at 723. Furthermore, the forum selection clause was clear on the face of the Dealer's Agreement. It was the only part of the Agreement in bold print and was contained on the third page of the Agreement. For these reasons, the Court concludes the forum selection clause meets the second test for enforcement.

3.    *Whether the Forum Selection Clause is Unreasonable or Unjust*

"A finding of unreasonableness or injustice must be based on more than mere inconvenience to the party seeking to avoid the requirements of the forum selection clause." *Preferred Capital* 453 F.3d at 722. Sandburg has made no claim as to unreasonableness or injustice beyond inconvenience to him. "It must instead appear that enforcement in Ohio would be 'manifestly and gravely inconvenient' to the party

seeking to avoid enforcement such that it will 'effectively be deprived of a meaningful day in court.'" *Id.* (quoting *Bremen* 407 U.S. at 19).

The only inconvenience to Sandburg is his having to travel to Ohio for trial. This type of inconvenience was found to not be unreasonable or unjust in *Interamerican Trade Corporation v. Companhia Fabricadora de Pecas*, 973 F.2d 487 (6th Cir.1992). There, the court upheld a forum selection clause against an Ohio plaintiff setting forum in a Brazilian court. Notably, the same connections to Ohio that are present in the instant case were present in *Interamerican*.

Sandburg argues there is already a case pending in Florida state court and that many of the operative facts, witnesses, occurrences, and evidence is in Florida. He maintains this makes trial in Ohio unreasonable and unjust. The same argument was asserted in *Interamerican*. The court held "[t]he problem with this argument is that it focuses on facts which were either present or reasonably could have been foreseen at the time ITC entered into the contract." *Id* at 489. Likewise, Sandburg knew at the time of contracting that he was contracting with an Ohio corporation, that he would be receiving merchandise from Ohio, and that he would be dealing with Ohio citizens. Given the lack of unreasonableness and unjustness, the third prong of the forum selection clause enforceability test is met.

The Dealer Agreement is commercial in nature. Moreover, the forum selection clause was not entered into as a result of fraud or overreaching . Lastly, the forum selection clause in this case is not unreasonable or unjust. For these reasons, the Court finds that it has personal jurisdiction over Sandburg. Consequently, the Court

denies Defendant Sandburg's motion to dismiss for lack of personal jurisdiction.

## C. Count II

When a trial court considers a motion to dismiss for failure to state a claim upon which relief may be granted under *Rule 12(b)(6)* it must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded material allegations as true. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982). A complaint may be dismissed for failure to state a claim only when it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). A motion to dismiss under *Rule 12(b)(6)* will be granted if the complaint lacks merit due to an absence of law to support a claim of type made or of facts sufficient to make a valid claim. *Rausch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1987).

A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). Under the Lanham Act, a claim for false designation or origin needs to contain two elements: (1) the false designation must have an economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion. *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957). "Although the jurisdictional interstate commerce element is necessary, 'likelihood of confusion is the essence of [a]...claim." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996)

(quoting *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 604 (6th Cir. 1991). Looking fully at Count II of Hague Water's Complaint and paragraphs 1 - 12 that they repeat and re-allege therein, Hague Water has met its pleading burden with respect to their 15 U.S.C. §1125(a) claims.

Sandburg's reliance on this Court's ruling in *Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, 403 F.Supp 2d 709 (S.D. Ohio 2006) is misplaced. In *Habeeba's* this Court granted the motion to dismiss of only one of the defendants because the complaint did not make particularized allegations against that defendant. The claims were allowed to stand as against the other defendant against whom they were particularized.

In sum, Hague Water has met its pleading burden with respect to its 15 U.S.C. §1125(a) claims. The Court therefore denies Sandburg's Motion to Dismiss Count II for failure to state a claim upon which relief may be granted.

### D. Punitive Damages

Sandburg asks the Court to dismiss Hague Water's demand for punitive damages claiming that the Lanham Act does not allow for a grant of punitive damages. Hague Water claims that the demand for punitive damages applied to not only the Lanham Act claims, but all seven counts in which they alleged wrongdoing.

Punitive damages are not available under the Lanham Act. *Duncan v. Stuetzle,* 76 F.3d 1480, 1490 (9th Cir. 1996); *Frish's Restaurant, Inc. v. Elby's Big Boy of Steubenville,* 661 F. Supp. 971, 992 (1987). Accordingly, the Court grants Sandburg's motion to dismiss plaintiffs' punitive damages claim insofar as plaintiff seeks punitive damages for violation of the Lanham Act. This ruling does not, however, preclude

Hague Water from seeking punitive damages with respect to its other claims.

### E. Transfer

Sandburg seeks, pursuant to 28 U.S.C. §1404(a), to transfer this action to the United States District Court for the Southern District of Florida, Northern Division. Sandburg argues that by weighing the public and private interests in the transfer, that transfer to federal court in Florida is appropriate.  Hague Water counters by arguing that there are equally as many public and private interests in Ohio counseling against transfer and that the forum selection clause in the Dealer Agreement fixes jurisdiction in this Court.

The party moving for transfer of venue generally has the burden of proving that transfer is appropriate and the plaintiff's choice of forum is entitled to considerable weight.  *See Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951).  In addition to the forum selection clause, the "district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, public interest factors of systemic integrity, and private concerns falling under the heading the interest of justice." *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 537-538 (6th Cir. 2002).  Ruling on discretionary transfer of venue motions requires a court to make a case-by-case evaluation of the particular circumstances at hand and consideration of all relevant factors.  *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

1.    *Forum Selection Clause*

The forum selection clause found in the Dealer Agreement that was entered into by Sandburg and Hague Water covers this dispute and its language is mandatory.  The

language clearly states that any state or federal court sitting in Franklin County, Ohio will have jurisdiction to hear a case between the parties. It also states that none of the parties will attempt to bring a case with regards to the Agreement in any court other than a state or federal court sitting in Franklin County, Ohio. The presence of such a clause weighs heavily in a district court's analysis under §1404(a). The party opposing its enforcement bears a heavy burden in overcoming the weight accorded to the clause. *See Kerobo*, 285 F.3d at 537. While the presence of the valid forum selection clause is a significant factor in the Court's analysis of the motion to transfer, it is not determinative. *See Stewart*, 487 U.S. at 32; *Kerobo,* 285 F.3d at 537. As such, we will consider the other relevant factors in determining whether to transfer venue.

### 2. *Convenience of the Parties and Witnesses*

Both parties contend that the convenience of the parties and witnesses would be best served by having the case tried in the federal court in the home state. Both parties are right and both parties are wrong. The convenience to parties and witnesses of having the case heard in one location rather than the other is fairly split down the middle. It appears some witnesses reside in Ohio and some in Florida. Given this split and taking into account the deference afforded plaintiff's choice of forum, the convenience of the parties and witnesses does not weigh in favor of transferring venue in this case to Florida.

### 3. *Public Interest Factors of Systematic Integrity*

Public interest factors include the issues of congested dockets, concerns with resolving controversies locally, and, in diversity cases, having the trial in a forum that is

at home with the state law that must govern the case. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). Here, there is no evidence of significant congestion in either venue. Hague is an Ohio corporation who contracts with businesses in many states across the country. To avoid having to try cases in each of the states in which it contracts, Hague Water expressly includes a provision in each of its contracts for the selection of Ohio as the forum. It would be against the public interest to force an Ohio corporation to try any case brought against it in any one of the fifty states solely because that is where the defendant is located. Furthermore, the forum selection clause expressly agreed to by both parties clearly sets Ohio as the forum and gives this court the public interest in enforcing Ohio contracts that set Ohio as the forum of choice. The Court concludes that public interest factors weigh against transfer.

4.   *Private Interest Factors*

The private interests of litigants include the "relative ease of access to sources of proof; availability of compulsory process for attendance or unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises...; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508. Both parties claim they have witnesses and evidence in their respective home states. As noted above, this split in interests does not weigh in favor of granting the requested transfer of the case to Florida.

For the foregoing reasons, the Court denies Sandburg's motion to transfer this case to the United States District Court for the Southern District of Florida, Northern Division.

### F. Stay

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgement, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). Since the Florida state court has already issued its decision on the choice of forum clause, there is no valid reason to grant the stay in the proceedings in this Court. Therefore, the Court denies Sandburg's Motion to Stay the Proceedings.

### III. Disposition

For the reasons stated above, the Court **GRANTS** defendant Sandburg's motion to dismiss or transfer or, in the alternative, to stay (Doc. 10) in part and **DENIES** it in part. The Court dismisses plaintiff's punitive damages claim only insofar as plaintiff seeks punitive damages for violation of the Lanham Act. The Court denies Sandburg's motion in all other respects.

The parties shall file the agreed injunction within eleven days after the date of this order. The parties shall file a joint written status report within twenty-one days after the date of this order indicating whether the parties have complied with the terms and conditions of the agreed injunction.

**IT IS SO ORDERED.**

Michael H. Watson, Judge
United States District Court